IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LINDA L. BUTCHER,                        )
                                         )
                Plaintiff                )
                                         )    Civil Action No. 05-249
        v.                               )    Judge Donetta W. Ambrose/
                                         )    Magistrate Judge Sensenich
INTERNATIONAL BROTHERHOOD OF             )    Re:  Doc. No. 31
ELECTRICAL WORKERS, PITTSBURGH           )
LOCAL NO. 5,                             )
                                         )
                Defendant                )

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

I.    RECOMMENDATION

        It is recommended that Defendant's Motion to Dismiss be
granted as to Plaintiff's claims against Defendant IBEW 5 under
the Equal Pay Act and for supporting and fostering her employer's
wrongful termination of her employment, in violation of
Pennsylvania Common Law, but that Defendant's motion to dismiss
be denied as to Plaintiff's Title VII and PHRA claims.

II.   REPORT

        Plaintiff, Linda L. Butcher, brings this action against
Defendant, International Brotherhood of Electrical Workers,
Pittsburgh Local No. 5 ("IBEW 5"), alleging the following:
(1) the IBEW 5 discriminated against her on the basis of her
gender, in violation of Title VII of the Civil Rights Act of
1964, 42 U.S.C. § 2000e-2 and the Pennsylvania Human Relations
Act (the "PHRA"), 43 P.S. §§ 951-963, and the Fair Labor
Standards Act of 1938 (the "FLSA"), as amended by the Equal Pay

Act of 1963; (2) the IBEW 5 retaliated against her for filing discrimination complaints against it with the Pennsylvania Human Relations Commission (the "PHRC") and created and fostered a hostile work environment against her, in violation of section 5(d) of the PHRA; and (3) the IBEW 5 supported and encouraged her employer, the Fayette Energy Project, to wrongfully terminate her employment, in violation of Pennsylvania Common Law.  Defendant seeks dismissal of Plaintiff's claims for failure to state a claim on which relief may be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons that follow, Defendant's motion to dismiss will be granted in part and denied in part.

A. <u>Standard for 12(b)(6) Motion to Dismiss</u>

In ruling on a motion to dismiss filed pursuant to Rule 12(b)(6), the Court is required to accept as true all allegations made in the complaint and all reasonable inferences that can be drawn from them, and to view them in the light most favorable to the plaintiff.  *Bensalem Township v. International Surplus Lines*, 38 F.3d 1303, 1308 (3d Cir. 1994) (citing *Blaw Knox Retirement Income Plan v. White Consolidated Industries, Inc.*, 998 F.2d 1185, 1188 (3d Cir. 1993)).  *See also*, *Alston v. Parker*, 363 F.3d 229, 233 (3d Cir. 2004).  The defendant bears the burden of establishing that the complaint fails to state a claim upon which relief can be granted.  *Gould Electronics,*

*Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).  The issue is not whether the plaintiff will ultimately prevail, but rather whether he can support his claim by proving *any* set of facts that would entitle him to relief.  *See Hishon v. King & Spaulding*, 467 U.S. 69 (1984).  Dismissal is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations." *See Port Authority of New York and New Jersey v. Arcadian Corp.*, 189 F.3d 305, 311 (3d Cir. 1999).

 B. <u>The Allegations of the Complaint</u>

        Defendant, IBEW 5, is a labor union.  (Compl. ¶ 6.) Plaintiff, an electrician, was a member of IBEW 5.  (Compl. ¶ 9.) She is a female and is over forty years of age.  (Compl. ¶ 11.) In March of 2002 she was referred by Defendant, and began working as an electrician on the Fayette Energy Project.  (Compl. ¶ 10.) In June of 2002, the project superintendent of the Fayette Energy Project, Mr. Dale Wynn, threatened to discharge her for "standing around."  (Compl. ¶ 19.)  Many male electricians spent time talking with co-workers but were not threatened with termination for "standing around."  (Compl. ¶ 20.)  Of the eleven people first placed on the job, Plaintiff was the only female.  (Compl. ¶ 21.)  All ten males were promoted by the general contractor to sub-foreman, but Plaintiff was not promoted.  (*Id.*)  She was laid off on December 12, 2002 by Mr. Wynn, allegedly because of a

3

reduction in force.  (Compl. ¶ 17.)  Younger male electricians who had less project seniority than Plaintiff were retained on the job or were rehired on referral of IBEW 5.  (Compl. ¶¶ 22 & 26.)  Plaintiff was not reassigned by the IBEW 5 and was not rehired by the Fayette Energy Project, although work remained for which male electricians were rehired.  (Compl. ¶ 24.)  In December, 2002 and continuing until the present, the IBEW 5 had a policy or practice of reassigning laid off male workers before female workers with the same or greater qualifications, resulting in the male workers being paid higher wages and receiving more benefits than female workers for equal work.  (Compl. ¶ 30.)  Defendant supported her employer, the Fayette Energy Project, when she was laid off despite the availability of work on the job; encouraged and supported her layoff when no layoffs were scheduled for the date and time of her layoff; encouraged and supported her lay off while male electricians with less time on the project were retained and recalled to the job in place of her; and encouraged and supported her being barred from the job site when she was sent there by the IBEW 5 after she was falsely accused by Mr. Wynn, in the presence of management officials, of malingering.  (Compl. ¶ 42.)

On February 24, 2003 Plaintiff filed a complaint with the Equal Employment Opportunity Commission (the "EEOC") and the PHRC, in which she claimed that because of her sex, she was laid

off and not rehired, and was denied work, compensation and benefits.  (Compl. ¶ 31.)  Plaintiff also filed a union grievance in accordance with the union's collective bargaining agreement. (Compl. ¶ 32.)  During her membership in the IBEW 5, Plaintiff expressed to the union representative her opposition to disparate treatment based upon gender, as well as her opposition to retaliation discrimination.  (Compl. ¶ 40.)

Defendant refused to send Plaintiff to training she requested to be become recertified as a welder and supported her employer when it refused to give its permission for her to practice her welding skills on the job site, when others were permitted to do so.  (Compl. ¶¶ 46, 48 & 49.)  The job site needed welders on the job at the time the training was denied to Plaintiff.  (Compl. ¶ 53.)  As a result of Defendant's refusal to send Plaintiff to training, she was not qualified as a welder and she was required to perform the lowest level tasks, which required more physical lifting, and working in standing water. (Compl. ¶ 50.)  Because of her age at the time, 57 years, and her physical stature, the tasks she was assigned were onerous and dangerous, and were calculated to make her quit her employment. (Compl. ¶ 51.)  As late as October 14, 2004, supervisors and foreman of IBEW 5 took actions against her to injure her on the job to the extent that she fears for her life, and she has complained about this to her Business Manager.  (Compl. ¶ 51.)

Plaintiff also alleges that she experienced the following incidents that indicated a patters of hostile actions taken against her and created a hostile work environment. (Compl. ¶ 59.)  She complained of loud, obnoxious and sexually graphic comments being made by supervisors to her and about her in the presence of her co-workers during the course of her employment at the Fayette Energy Project.  (Compl. ¶¶ 55 & 56.) The IBEW 5 failed to take any action against the offending supervisors and foremen to stop them from making the offending remarks, and, in fact, supported the offending actions.  (Compl. ¶ 57.)  On February 3, 2003 Plaintiff was sent by IBEW's business agent to a job at the Fayette County Prison and when she arrived there, the job, foreman, and employing company were unknown to the guards, and apparently did not exist.  (Compl. ¶ 58.)

In December, prior to be being laid off by the Fayette Energy Project, Plaintiff injured her back lifting heavy equipment.  (Compl. ¶ 70.)  She was assigned "light duty" by the staff of Medcor, the "on sight" medical provider.  (Compl. ¶ 71.) Her employer informed her that no light duty work was available and assigned her to sit alone in an unoccupied area all day during work days and was told not to leave that area.  (Compl. ¶ 74.)  Plaintiff was laid off immediately upon her medical release to regular duty.  (Compl. ¶ 75.)  The IBEW 5 encouraged these actions taken by her employer.  (Compl. ¶ 76.)

6

In February 2003, the IBEW 5 assigned Plaintiff to work at the Fayette Energy Project.  (Compl. ¶ 77.)  Plaintiff was barred from entry to any part of the site by former Defendants Fluor Constructors International, Inc. ("FCII") and Gulf Coast Fire and Safety Inc. ("Gulf Coast").[1]  (Compl. ¶ 78.)  Plaintiff was discharged by the Fayette Energy Project, and refused permission to work because she filed a complaint with the PHRC; she requested light duty work because of an on the job injury; and because she expressed her opinion on workplace issues to her co-workers.  (Compl. ¶ 81.)  The IBEW 5 supported the actions taken by her employer, Fayette Energy Project, and in fact encouraged those actions.  (Compl. ¶ 82.)  IBEW 5's actions were willful and malicious, and were undertaken to deprive her of her constitutionally protected rights, an to cause her injury and emotional anguish.  (Compl. ¶ 84.)

C. Discussion

Defendant initially argues that Plaintiff's federal and state law discrimination claims against it should be dismissed pursuant to Rule 12(b)(6) because it was not her employer. (Def.'s Br. (Doc. No. 32) at 4.)  In support of its argument it cites *Anjelino v. The New York Times Co.,* 200 F.3d 73 (3d Cir.

---

[1]Originally, FCII and Gulf Coast were Defendants in this action.  They were dismissed from this action, with prejudice, by stipulation of dismissal, filed on December 16, 2005.  The only defendant remaining is IBEW 5.

2000).  In *Anjelino,* as to the labor union defendant, the United States Court of Appeals for the Third Circuit, affirmed the district court's dismissal of the Title VII and New Jersey Law Against Discrimination (the "NJLAD") discrimination and retaliation claims brought against the union because the union was not the plaintiffs' employer.  200 F.3d at 95.  Specifically, the court concluded that the record "[did] not demonstrate that the Union *itself* instigated or actively supported the discriminatory acts allegedly experienced by the [plaintiffs]." *Id.* (emphasis in original).  It held that the party responsible for assigning work to the plaintiffs and for ensuring against a work place contaminated with sex and race-based discrimination and harassment was the defendant, the New York Times Company. *Id.* at 96.  Despite dismissing the claims against the labor union in *Anjelina*, however, the court of appeals acknowledged that "a union may be held liable under Title VII."  *Id.* at 95.  Indeed, with regard to unlawful employment practices,

> [i]t shall be an unlawful employment practice
> for a labor organization--
>
> > (1) to exclude or to expel from its
> > membership, or otherwise to discriminate
> > against, any individual because of his
> > race, color, religion, sex, or national
> > origin;
> >
> > (2) to limit, segregate, or classify
> > its membership or applicants for
> > membership, or to classify or fail or
> > refuse to refer for employment any
> > individual, in any way which would

deprive or tend to deprive any
individual of employment opportunities,
or would limit such employment
opportunities or otherwise adversely
affect his status as an employee or as
an applicant for employment, because of
such individual's race, color, religion,
sex, or national origin; or

(3) to cause or attempt to cause an
employer to discriminate against an
individual in violation of this section.

42 U.S.C.A. § 2000e-2(c) (West 2003).

Here, in support of her claims against the labor union,
the IBEW 5, Plaintiff alleges in her Complaint that in December,
2002 and continuing until the present, the IBEW 5 had a policy or
practice of reassigning laid off male workers before female
workers with the same or greater qualifications, resulting in the
male workers being paid higher wages and receiving more benefits
than female workers for equal work.  (Compl. ¶ 30.)  She also
alleges that the IBEW 5 supported her employer, the Fayette
Energy Project, when she was laid off despite the availability of
work on the job; encouraged and supported her layoff when no
layoffs were scheduled for the date and time of her layoff;
encouraged and supported her lay off while male electricians with
less time on the project were retained and recalled to the job in
place of her; and encouraged and supported her employer when it
barred her from the job site after she was falsely accused by
Mr. Wynn, in the presence of management officials, of
malingering.  (Compl. ¶ 42.)  In addition, she alleges that as

late as October 14, 2004, supervisors and foreman of IBEW 5 took actions to injure her on the job to the extent that she fears for her life, and she has complained about this to her Business Manager.  (Compl. ¶ 51.)

To further support her Title VII and PHRA claims against the IBEW 5, Plaintiff alleges that when she complained of loud, obnoxious and sexually graphic comments being made to her and about her by supervisors in the presence of her co-workers during the course of her employment at the Fayette Energy Project (Compl. ¶¶ 55 & 56), the IBEW 5 failed to take any action against the offending supervisors and foremen to stop them from making the offending remarks, and, in fact, supported the offending actions (Compl. ¶ 57).  Also, Plaintiff alleges that on February 3, 2003 she was sent by IBEW's business agent to a job at the Fayette County Prison that apparently did not exist.  (Compl. ¶ 58.)  Furthermore, she alleges that the IBEW 5 encouraged the Fayette Energy Project's actions in assigning her to sit alone in an unoccupied area all day during work days when she was restricted to light duty because of an "on the job" injury and in laying her off immediately upon her medical release to regular duty  (See Compl. ¶¶ 74-77 & 82.)  Finally, Plaintiff alleges that IBEW 5's actions were willful and malicious, and were undertaken to deprive her of her constitutionally

protected rights, and to cause her injury and emotional anguish.
(Compl. ¶ 84.)

Accepting as true these allegations, and drawing all
reasonable inferences from them, and viewing them in the light
most favorable to Plaintiff, it is not clear that no relief could
be granted under any set of facts as to her Title VII and PHRA
claims.  Accordingly, Defendant's motion to dismiss should denied
as to Plaintiff's Title VII and PHRA claims.

Defendant also argues that Plaintiff has failed to
state a claim against it under the Equal Pay Act because under
that Act, labor organizations are not employers unless the labor
organization itself is acting as an employer.  (Def.'s Br. at 5.)
Section 203(d) defines "employer" as follows:

> "Employer" includes any person acting
> directly or indirectly in the interest of an
> employer in relation to an employee and
> includes a public agency, <u>but does not
> include any labor organization (other than
> when acting as an employer) or anyone acting
> in the capacity of officer or agent of such
> labor organization</u>.

29 U.S.C.A. § 203(d) (West 1998) (emphasis added).  "An employee
may bring an action for back pay under the Equal Pay Act only
against his or her employer.  *Denicola v. G.C. Murphy Co.,*
562 F.2d 889, 893 (3d Cir. 1977).  See also, *Lyon v. Temple Univ.
of the Commw. System of Higher Educ.,* 507 F.Supp. 471 (E.D. Pa.
1981) (although unions are not immune from the mandates of the

Fair Labor Standards Act, "the Act is also clear that aggrieved employees have a cause of action against their employer only"). Consequently, Plaintiff has failed to state a claim against Defendant IBEW 5 under the Equal Pay Act and Defendant's motion to dismiss as to this claim should be granted.

Finally, Defendant argues that Plaintiff's common law claims are barred by the PHRA's exclusivity provisions.  (Def.'s Br. at 6-7.)  The Pennsylvania Human Relations Act provides, in relevant part:  "[A]s to acts declared unlawful by section five of this act the procedure herein provided shall, when invoked, be exclusive and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the complainant concerned."  43 Pa.C.S.A. § 962(b) (West 1991). Defendant also argues that Plaintiff has no cause of action for wrongful termination against it because it is not Plaintiff's employer, and therefore, it did not terminate her.

Plaintiff alleges that she was discharged by the Fayette Energy Project because she filed a complaint with the PHRC, requested light duty work due to an "on the job" injury, and expressed her opinion on workplace issues to her co-workers. (Compl. ¶ 81.)  Her claim against Defendant IBEW 5 is that it encouraged and supported her discharge.  She argues that her common law claim for wrongful termination, while it includes some of the same facts on which her discrimination claims are based,

12

expanded on those facts and is not, therefore, based on the same grievance.  Moreover, she argues that the courts have carved out an exception to the exclusivity provisions of the PHRA under circumstances where a public policy is abridged.  (Pl.'s Br. (Doc. No. 34) at 6-8.)  The public policy exception to which Plaintiff refers has been described by the Pennsylvania Supreme Court as follows:  "The employer's privilege to dismiss an employee with or without cause is not absolute, however, and may be qualified by the dictates of public policy."  *Shick v. Shirey,* 716 A.2d 1231, 1233 (Pa. 1998).  In *Shick*, the court rejected the premise that "what is cognizable as public policy is only that which has been legislatively enacted . . . ."  716 A.2d at 1235. In *Geary v. United States Steel Corp.,* 319 A.2d 174, 184 (Pa. 1974), the Pennsylvania Supreme Court stated:

> It may be granted that there are areas of an
> employee's life in which his employer has no
> legitimate interest.  An intrusion into one
> of these areas by virtue of the employer's
> power of discharge might plausibly give rise
> to a cause of action, particularly where some
> recognized facet of public policy is
> threatened.  The notion that substantive due
> process elevates an employer's privilege of
> hiring and discharging his employees to an
> absolute constitutional right has long since
> been discredited.  But this case does not
> require us to define in comprehensive fashion
> the perimeters of this privilege, and we
> decline to do so.  We hold only that where
> the complaint itself discloses a plausible
> and legitimate reason for terminating an
> at-will employment relationship and no clear
> mandate of public policy is violated thereby,

13

> an employee at will has no right of action
> against his employer for wrongful discharge.

(Internal footnote omitted.)  Even presuming, however, that the
Pennsylvania courts would recognize a cause of action for
wrongful discharge for breaches of the two separate public
policies that Plaintiff alleges occurred (termination because
of a request for light duty and termination for exercising
freedom of expression), Plaintiff has presented no authority
recognizing a cause of action against one who is not an employer,
*i.e.*, a labor union.  Accordingly, Defendant's motion to dismiss
Plaintiff's claim against the IBEW 5 for supporting her
employer's wrongful termination of her employment, in violation
of Pennsylvania Common Law, should be granted.

III. <u>CONCLUSION</u>

        For the reasons discussed above, it is recommended that
Defendant's Motion to Dismiss be granted as to Plaintiff's claims
against Defendant IBEW 5 under the Equal Pay Act and for
supporting and fostering her employer's  wrongful termination of
her employment, in violation of Pennsylvania Common Law, but that
Defendant's motion to dismiss be denied as to Plaintiff's Title
VII and PHRA claims.

        In accordance with the Magistrates Act, 28 U.S.C.
§ 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for
Magistrates, the parties are allowed ten (10) days from the date

of service to file objections to this report and recommendation.
Any party opposing the objections shall have seven (7) days from
the date of service of objections to respond thereto.  Failure to
file timely objections may constitute a waiver of any appellate
rights.


                                        *s/Ila Jeanne Sensenich*
                                        Ila Jeanne Sensenich
                                        U.S. Magistrate Judge


Dated:  May 25, 2006

cc:  Richard P. Kimmins, Esq.
     Kimmins, Kross and Puzak
     Seventh Floor
     304 Ross Street
     Pittsburgh, PA  15219

     Joshua M. Bloom, Esq.
     Jonathan R. Colton, Esq.
     Koerner, Colarusso & Bloom
     13th Floor North
     One Gateway Center
     Pittsburgh, PA  15219